# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| BYRON SILL and<br>DANIEL YARBOROUGH,<br><br>Plaintiffs,<br><br>vs.<br><br>AVSX TECHNOLOGIES, LLC and<br>BOBBY JOHNSON,<br><br>Defendants. | Civil Action Number: 3:16-cv-0555-MBS<br><br>**ORDER AND OPINION** |

On December 23, 2015, Plaintiffs Byron Sill and Daniel Yarborough ("Plaintiffs") sued Defendant AVSX Technologies, LLC ("AVSX") and Bobby Johnson ("Defendants") for violations of South Carolina Wage Payment Schedule, South Carolina Code Annotated §§ 41-10-50 *et seq.*, and Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. ECF No. 1-1 ¶¶ 17-28. Plaintiffs claim that they are entitled to unlawfully withheld "holdbacks" and "overrides" under the South Carolina Wage Payment Schedule. ECF No. 1-1 ¶¶ 17-23. Plaintiffs' second claim is that they were unlawfully characterized as independent contractors rather than statutory employees pursuant to the FLSA. *Id.* at ¶¶ 24-28. Plaintiffs' FLSA claims assert that they were damaged by failure to provide benefits and increased taxes. *Id.*

Defendants removed to federal court on February 24, 2016, under 28 U.S.C. § 1441. ECF No. 1 at 1. Defendants moved for summary judgment on October 7, 2016. ECF No. 16. Plaintiffs responded on November 18, 2016. ECF No. 24. Defendants replied on December 1, 2016. ECF No. 27. Defendant AVSX filed a motion in limine on December 7, 2016. ECF No. 28. Plaintiffs filed a motion in limine on December 7, 2016. ECF No. 29. With the consent of Plaintiffs, on

1

January 19, 2017, the court granted Defendants' motion for summary judgment on the FLSA claims. Further, Plaintiff's consented to dismissing the claims against Defendant Johnson.

## I. FACTUAL BACKGROUND

Defendant AVSX "is engaged in the business of selling, installing, and servicing home security systems," which are then monitored by another company, Vector Security, Inc. ("Vector"). ECF No. 16-1 at 3. Plaintiffs were part of a group of individuals employed by Defendant AVSX to sell the home security systems. *Id.* Another group of individuals install and service the home security system. *Id.* Plaintiffs worked at a competitor of Defendant AVSX, Palmetto Alarm, but moved to Defendant AVSX with one of the owners of Palmetto Alarm, Jamie Wilson ("Wilson"), in April 2011. *Id.* at 3. The sales team is structured like a triangle, Wilson is at the top of the triangle and receives commissions for all of the sales made; next are Plaintiffs, who receive commissions for all of the salespeople below them; and so on.

From August 2012 through May 2014, Plaintiffs were employed under an independent contractor contract. Plaintiffs' August 2012 employment contracts "acknowledg[e] that they were independent contractors rather than employees." ECF Nos. 16-5 (Plaintiff Yarborough), 16-6 (Plaintiff Sill). Further, Plaintiffs' employment agreement states that "[Plaintiff] agrees and understands that he/she is an authorized agent of [Defendant AVSX], but not an employee for Federal and State Income Tax purposes . . . . [Plaintiff] is considered an Independent Contractor . . . ." ECF Nos. 16-5 at 2, 16-6 at 2. From May 2014 through December 2014, Defendant AVSX employed Plaintiffs under a contract stating that they were W-2 employees. ECF Nos. 16-7 (Plaintiff Yarborough), 16-8 (Plaintiff Sill). The main differences in the terms of the April 2011 signed contract and the May 2014 signed contract are a two-page addendum in the May 2014

2

contract explaining the override policy and the May 2014 contract identifying Plaintiffs as "employee[s]" rather than "affiliate[s]." *See id.*

Plaintiffs were paid on commission for the number of home security systems that they sold, regardless of classification as employee or affiliate. Customer would "make an initial payment which covered the cost of the equipment and installation as well as Plaintiffs' commission and agreed to make monthly payments thereafter to compensate Defendant [AVSX] for providing ongoing security services." ECF No. 24 at 1. Vector would retain ten percent of the initial payment in case of "chargebacks." A "chargeback" occurs when a customer fails to keep a contract for the full year. A "chargeback" is the "amount paid by Vector to Defendant AVSX to fund the contract initially," and would be "charged back" to the individual if the customer canceled within the first twelve months. Defendant AVSX retained ten percent of the commission payment, called a "holdback," in case of a "chargeback." *Id.*; ECF No. 16-1 at 3. Ten percent is an industry standard. *Id.* The "holdback" protects Defendant AVSX from a customer default within the first twelve months. *Id.* If the customer does not default, Plaintiffs would be paid the ten percent the thirteenth month unless the salesperson's "holdbacks" was exceeded by "chargebacks." ECF 16-1 at 3. The contract contains various other items that a salesperson could be charged for, including charges for "no shows or cancel[lations] at the door"; if the salesperson has too many accounts with a credit score below 650; and if a client cancels a contract, for installation and removal of the equipment along with equipment costs. *Id.* at 1. As stated in the contract, employees were required to keep a $1,000 reserve in the event that "charge backs" remain on their account at the time the employee leaves. *Id.* Plaintiffs did not pay any money back to Defendant AVSX when they left. Plaintiffs' contracts were slightly different from others. The usual practice was that "holdbacks" would go to team leaders in the thirteenth

3

month, not the salespeople. However, as part of their contracts Plaintiffs were supposed to be given their "holdbacks" when they were salespeople and also as team leaders. ECF No. 36 at 55.

From April 2011 through August 2012, Defendant AVSX paid Wilson and Wilson paid Plaintiffs through his personal checking account. ECF No. 16-1 at 4. Defendant AVSX paid Plaintiffs directly from August 2012 through the end of their employment in December 2014. *See id.* at 1. Wilson left Defendant AVSX in November 2013 and Plaintiffs took over as sales team leaders.

From April 2011 to August 2012, Wilson provided IRS Form 1099-Miscellaneous Income ("Form 1099") to each Plaintiff. ECF No. 16-2 at 3-4. From August 2012 through November 2013, Defendant AVSX provided Form 1099 to each Plaintiff. *Id.* at 4.

Plaintiff's employment contract states that an employee is not required to be exclusive but there is a $100 bonus for exclusivity and an exclusive employee "cannot contract for a period of 36 months with Alarm Accounts outside [Defendant AVSX's] relation for any services, referrals, nor solicit any Alarm Accounts." ECF Nos. 16-5 at 2; 16-6 at 1. If an employee agrees to exclusivity, he also agrees to a "non-compete" clause, which states he will not provide "substantially similar services" within the territory the employee served under Defendant AVSX. The non-compete clause does not include an end date. *Id.* at 4. Plaintiff Yarborough's 2011 contract states that the affiliate can only sell contracts within a 60 mile radius of his or her home base (i.e., city the affiliate is based in), regardless of exclusivity.[1] ECF No. 16-5 at 5. As stated at the hearing held on January 19, 2017, both Plaintiffs agreed to exclusivity. *See* ECF No. 40.

Defendant AVSX did not provide Plaintiffs with dedicated offices. *Id.* at 2. Plaintiffs set their own hours, identified and solicited their own customers. *Id.* Defendant AVSX provides a

---

[1] Plaintiff Sill's 2011 contract does not require him to remain in a sixty mile radius of his home base.

4

"company identification badge, business cards, and staff shirt." ECF 16-5 at 3. Each Plaintiff was required to present his identification badge "so that clients can identify [Plaintiff] as an authorized agent for [Defendant AVSX]." *Id.* Defendant AVSX also provided marketing materials. *Id.* Plaintiffs were given work cellphones and iPads. While company policy states only team leaders drive company cars, Plaintiffs drove company cars prior to their status as team leaders. *See* ECF No. 36 at 67.

In early 2014, Plaintiffs were told that if they did not change their status to W-2 employees, they would not be allowed to be team leaders, drive company vehicles, or go into certain areas to work. *Id.* at 68-69. Plaintiffs agreed to become W-2 employees. When Plaintiffs became W-2 employees, Defendant AVSX reduced their commissions by ten percent. ECF No. 16-1 at 6.[2] Plaintiffs assert that they did not receive any new benefits when they became W-2 employees. ECF No. 36 at 73. Both the August 2012 and May 2014 employment contracts automatically renewed every thirty days and Defendant AVSX retained the right to terminate the contracts with twenty-four hour notice. ECF Nos. 16-5 at 2, 16-7 at 2.

## II. SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The judge does not weigh evidence but determines if there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating an absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving

---

[2] Plaintiffs and Defendants dispute the reason for the ten percent reduction. Defendant AVSX states this was to cover benefit costs in general, Plaintiffs state this was to cover FICA charges imposed on ASVX. *Id.* at 6 n.9.

5

party must affirmatively demonstrate that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court should grant summary judgment if a party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III. ANALYSIS

Plaintiffs allege that "Defendants violated the Wage Payment Act by failing to pay Plaintiffs all sums due and owing as earned wages and earned benefits." ECF No. 1-1 at ¶ 19. Plaintiffs appear to have four separate claims: (1) the holdback amount that exceeded the "chargeback" amount, (2) not receiving the overrides they were contracted to receive, (3) losing benefits due to improper classification, and (4) a tax burden increase due to misclassification. ECF No. 16-1 at 7. At the hearing, Plaintiffs conceded that they cannot bring a claim for "losing benefits" or "tax burden increase" under either the Wage Payment Act or Fair Labor Standards Act. *See* ECF No. 40. Accordingly, Plaintiff's Fair Labor Standards Act claims are dismissed.

1. "Holdbacks"

South Carolina Code Annotated § 41-10-40 provides that "[e]very employer in the State shall pay all wages due . . . . An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions." If the employer has failed to "pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover an amount equal to three times the full amount or three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees." S.C. Code Ann. § 41-10-80(C).

*a. Statute of Limitations*

South Carolina Code Annotated § 41-10-80(c) states that "any civil action for the recovery of wages must be commenced within three years after the wages become due." Defendant AVSX argues there is no jurisprudence holding that failure to pay "holdbacks" constitutes a continuing violation. ECF No. 16-1 at 10. Plaintiffs provide no case law. *See* ECF No. 24 at 2-3. However, FLSA has a similar statute of limitations for claims, see 29 U.S.C. § 255. Courts interpreting the FLSA statute of limitations have found that each failure to pay proper wages begins a new limitations period. *E.g.*, *Jenkins v. Home Ins. Co.*, 635 F.2d 210 (4th Cir. 1980); *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 347 (4th Cir. 1994) ("Along with the Supreme Court, we have applied the doctrine of continuing discrimination to . . . Equal Pay Act cases in which paychecks have been characterized as current or 'continuing' violations."). Plaintiffs assert they were due "holdbacks" on the thirteenth month after a home security contract was signed; accordingly, each thirteenth month after a contract was signed and "holdbacks" were due constitutes a new limitations period.

Plaintiffs allege their first "holdback" payment should have been made in April 2012. Plaintiffs initially approached Defendant Johnson in April 2012 to discuss why Plaintiffs were not receiving their "holdbacks." ECF No. 35 at 59. Defendant Johnson allegedly responded to Plaintiffs that they were not getting their "holdbacks". *Id.* at 59-60. Plaintiffs state that Defendant Johnson was unapproachable; therefore, they did not discuss the "holdbacks" with him again. *Id.* at 60. Plaintiffs filed the present lawsuit on December 23, 2015. Each week or month when Defendant AVSX failed to pay Plaintiffs their "holdbacks" created a new cause of action. Accordingly, any sums due to Plaintiffs before December 23, 2012, falls outside the statute of limitations and these claims are barred.

Defendant AVSX raises a second issue of proper calculation of "holdbacks" and "chargebacks" if some of Plaintiffs' claims are time barred. Defendant AVSX argues that if Plaintiffs' "chargebacks" exceeded their "holdbacks" in December 2012, Plaintiffs should have to use the negative number as a starting point. However, Defendant AVSX would also be subject to a three year statute of limitations if they were to sue Plaintiffs for the excess "chargebacks" under South Carolina contract law. *See* S.C. Code Ann. 15-3-530(1). Accordingly, the amount for "holdbacks," "overrides," and "chargebacks" start at zero on December 23, 2012.

### b. *Employee or Independent Contractor*

Plaintiffs and Defendant AVSX dispute whether Plaintiffs were incorrectly identified as independent contractors. Only an employee may recover under the South Carolina Payment of Wages Act and FLSA. *Adamson v. Marianne Fabrics, Inc.*, 391 S.E.2d 249, 250-51 (S.C. 1990); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). Accordingly, the court must first determine whether there is a genuine issue of material fact whether Plaintiffs are independent contractors or employees. Under South Carolina law, the question is whether the employer has the right to control the individual in the performance of work and the manner in which it is done. *Kilgore Grp. Inc. v. South Carolina Employ. Sec. Comm'n*, 437 S.E.2d 48, 49 (S.C. 1993). The contract has considerable weight but is not dispositive. *Id.* (finding individuals were employees based on employment relationship regardless of contract expressly stating they were independent contractors). South Carolina considers the following factors in determining whether an employer-employee relationship exists: (1) direct evidence of the right to, or exercise of, control, (2) method of payment, (3) furnishing of equipment, and (4) right to fire. *Id.* In *Lewis v. L.B. Dynasty*, 770 S.E.2d 393, 395 (S.C. 2015), the South Carolina Supreme Court held that an exotic dancer was a statutory employee even though the plaintiff set her own hours and was paid

directly by customers, not her employer. *Id.* at 396-97. The court found that the defendant provided most of the equipment. *Id.* at 397. Lastly, that the "power to fire . . . is the power to control," and the court found that the defendant's ability to prevent the plaintiff from completing her shift or prevent her from working at the club weighed in favor of an employee-employer relationship. *Id.* at 398.

Defendant AVSX argues that Plaintiffs are independent contractors, citing the ability to set their own schedules and determine potential clients. ECF No. 16-1 at 9. They state that Plaintiffs were able to set their own geographic boundaries. *Id.* Plaintiffs signed contracts agreeing to be independent contractors, that they would pay their own taxes, and would not receive benefits. *Id.* Defendant AVSX states there was no dedicated office for Plaintiffs. Finally, for team meetings, Team Leaders were told that they could compel employee attendance but could only encourage independent contractors to attend, it is unclear how this worked in practice.

Plaintiffs argue that they were given company shirts, company identification (that they had to present), and company marketing materials. ECF No. 24 at 7. The company provided the contract forms, prices, terms, and conditions of sale. *Id.* At some point, Plaintiffs were also given Company iPads, cell phones, and company vehicles. When a customer would purchase a contract, the customer would pay Defendant AVSX, who would then make deductions and pay Plaintiffs. *Id.* Defendant AVSX retained the right to fire Plaintiffs at any time, without or without cause. *Id.* Further, in the employment contract, there were benefits for the individual to be "exclusive," meaning only employed by Defendant. If the party agreed to be exclusive, he or she would be paid an initial bonus and agreed to stay within a geographic limit. ECF No. 16-5 at 2, 4. Plaintiffs were given additional supervisory responsibilities in November 2013. Lastly, once

9

Plaintiffs become employees in May 2014, there were no changes to their relationship to the company.

The court finds that there is a genuine issue of material fact whether Plaintiffs were statutory employees or independent contractors after November 2013. A reasonable jury could find that Plaintiffs were employees regardless of the contracts that they signed.

   *c. South Carolina Wage Payment Act*

Defendant AVSX asserts that it paid Plaintiffs all amounts due. ECF No. 16-1 at 11. Defendant AVSX point out that Plaintiffs have "testified that they have no knowledge of the actual amount owed and no documents to support their claim that the holdbacks exceeded the chargebacks." *Id.* at 12. Defendant AVSX's documents and the deposition testimony of Ms. Nacolle Caltrider, Defendant AVSX's employee in charge of payroll, allegedly show Plaintiffs' "chargebacks" exceeded their "holdbacks." *Id.* Defendant AVSX argues that Plaintiffs were also charged when the company had to service a client during the first twelve months after installation, which were deducted from their "holdbacks." *Id.* at 13. The service charge was $75. Lastly, Defendant AVSX assert that Jamie Wilson was paid $36,000 in "holdbacks," which would offset the amount due to Plaintiffs. *Id.*

Plaintiffs agree that they do not have any documents proving the amount owed to them; however, Plaintiffs calculated their "holdbacks" based on the documents provided and determined they were due $47,000. ECF No. 24 at 6. Plaintiffs also recalled prior conversations with Defendant Johnson and another party about their low number of "chargebacks." ECF Nos. 35 at 48 (Sill always had less than 3% of accounts charged back); 36 at 62 (Yarborough had 22 "chargebacks" at the time he left). Plaintiffs also recalled checking the number of "chargebacks" they had while Defendants employed them, and the number of "chargebacks" was lower that

10

Defendant AVSX alleges. Plaintiffs assert that in Defendant AVSX's calculations certain accounts were double-counted, and Defendant AVSX used the improper "chargeback" amount (as discussed above). *Id.* Plaintiffs and Defendant AVSX agree that the "holdbacks"/"chargebacks" are calculated based on Plaintiffs' sales team, not Plaintiffs' individual clients. ECF No. 24 at 5. Plaintiffs provided their own calculations for "holdbacks"/"chargebacks" beginning in November 2013, when they became team leaders. Plaintiffs argue that this calculation demonstrates Plaintiffs are entitled to "holdbacks." Lastly, Plaintiffs dispute whether they were supposed to be charged when the company has to service a client, arguing that this provision is not in any of their contracts. ECF No. 24 at 6. Accordingly, there is a genuine issue of material fact whether Plaintiffs are entitled to "holdbacks."

  *d. Motions in Limine*

  Plaintiffs seek to exclude Defendant AVSX from "offering any extrinsic evidence, including witness testimony, which contradicts the sworn testimony of Defendants (sic) Rule 30 (b)(6) witness regarding the calculation of the correct amount used to calculate the "chargebacks" to Plaintiffs' holdback accounts." ECF No. 29 at 1. Defendant AVSX moves to exclude any extrinsic evidence, including witness testimony or opinion as to the interpretation of the language contained in the affiliate and employment agreement of Plaintiffs. ECF No. 28 at 1.

  Under South Carolina law, where the contract's language is clear and unambiguous, the language alone determines its effect. *Schulmeyer v. State Farm Fire & Casualty Ins. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). The contract should be read as a whole, not in a piecemeal fashion, to avoid reading ambiguity into the contract. *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001). If the contract is ambiguous, the court may look to extrinsic

evidence to determine the meaning of the contract. Any ambiguity in the document is construed against the drafter of the agreement. *Williams v. Teran, Inc.*, 221 S.E.2d 526, 529 (S.C. 1996).

At issue is the proper amount to calculate "chargebacks." Plaintiff argues that "gross commissions" is the proper amount. ECF No. 29 at 1. Defendant AVSX argues the "chargeback" is the "purchase price paid back to Vector by [Defendant] AVSX." ECF No. 27 at 6. The contract provisions at issue are:

> ¶ 8: GUARANTEES: Affiliate will personally guarantee the performance of each Alarm Account for the 12 month Guarantee period from the date of funding to the Company from the Central Station. ***Affiliate will owe to Company an amount equal to the Purchase Price paid by company for each Alarm Account that defaults/Charges Back***, and Company shall be entitled to offset the amount of each Purchase Price amount against amounts due to Affiliate from Qualified Accounts subsequently purchased by Company.
>
> ¶ 19: Purchase Price and Guarantee Period: Alarm Accounts that Default/Charge Back are paid back to Company based on the Purchase Price Affiliate sold the Alarm Account to Company, ***Affiliate will be Charged Back gross commission, (subsides equipment pricing is not included in gross commission)***
>
> Policies and Procedures ¶ 7: You understand that while actively selling for company, in event you get a charge back, ***you will only be charged the amount you are paid based on the monthly rate you charged the client.*** Unlike other companies that charge you the full amount of the funding, including installation, etc., ***we only charge you what the monthly rate commission is based on***. Meaning that if you sell a client a $34.95 with $99 activation and your commission is $450, then we would only deduct $450.00. . . . ***The only time you are responsible for a full chargeback is in the event that a client charges back within the first 90 days . . . or in the event you sell a deal under false pretense***.

ECF No. 16-6 at 2-3, 5 (emphases added).[3] These sections appear to contradict each other in how a "chargeback" is calculated[4], leading to ambiguity in the contract that would support either

---

[3] The 2011 contract and 2014 contracts are substantively the same for these paragraphs, and Plaintiffs signed identical contracts.

[4] Defendant AVSX's understanding and practice of chargebacks seems to contradict their own example in ¶ 7. For example, ECF No. 37 at 2 shows a "chargeback" for a customer and it appears that Defendant AVSX charged back the funding amount of $1,552.15. However, comparing to Plaintiff Yarborough's commission as extrapolated from ECF No. 37 at 1, Plaintiff

12

Plaintiffs' reading or Defendant AVSX's reading. Accordingly, both motions in limine are denied.

## IV. CONCLUSION

Plaintiffs' motion in limine is DENIED. Defendant AVSX's motion in limine is DENIED. Defendant AVSX's motion for summary judgment is GRANTED in part and DENIED in part. Defendant AVSX's motion is granted as to any claims prior to November 2013 and is denied as to any claims after November 2013.

s/ Margaret B. Seymour   _____<br>
The Honorable Margaret B. Seymour<br>
Senior United States District Court Judge

March 17, 2017
Columbia, South Carolina

---

Yarborough only received a commission of $1,258.50 for that customer; therefore, the "chargeback" should have been limited to $1,258.50.